IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GERALD SCOTT MAYEK,

                Plaintiff,

v.                                                OPINION and ORDER

GARY BOUGHTON, MARIA LEMIEUX,              22-cv-36-jdp
and JOHN DOE CAPTAINS-LIEUTENANTS,

                Defendants.

---

    Plaintiff Gerald Scott Mayek, appearing pro se, is currently a prisoner at Kettle Moraine Correctional Institution. Mayek alleges that when he was incarcerated at Wisconsin Secure Program Facility, officials there ordered his transfer out of the institution despite knowing that it would prevent him from receiving adequate medical treatment for his chronic inflammatory condition. Mayek also alleges that the officials transferred him in retaliation for him filing previous lawsuits about his medical care. I granted him leave to proceed on claims under the First and Eighth Amendments to the United States Constitution.

    Defendants Maria Lemieux and Gary Boughton have filed a motion for summary judgment on exhaustion grounds. Dkt. 40. I will grant that motion and I will dismiss the case.

ANALYSIS

    The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before filing a lawsuit in federal court about "prison conditions." 42 U.S.C. § 1997e(a). To comply with § 1997e(a), a prisoner must take each step in the administrative process, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d

714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require," *Pozo*, 286 F.3d at 1025. To exhaust administrative remedies in Wisconsin, inmates ordinarily must follow the Inmate Complaint Review System (ICRS) process as set forth in Wisconsin Administrative Code Chapter DOC 310. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendant. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

Defendants contend that the case should be dismissed because Mayek did not file an administrative grievance about his transfer from WSPF. Mayek agrees that he did not file a grievance, but he raises four arguments for why the case should not be dismissed for failure to exhaust.

First, he states that he wasn't sure whether a transfer is a "prison condition" under § 1997e(a) that needs to be grieved. But Mayek's ignorance of the legal standard is no defense to defendants' summary judgment motion. This court has previously assumed that issues about transfers within a facility or between facilities concern "conditions" that need to be exhausted, *see, e.g.*, *Shipp v. Lobenstein*, No. 22-cv-616-jdp, 2023 WL 3119847 (W.D. Wis. Apr. 27, 2023) (transfer to a "punishment unit"); *Staten v. Hoem*, No. 20-cv-219-wmc, 2021 WL 86773, at *1 (W.D. Wis. Jan. 11, 2021) (cancellation of referral to Wisconsin Resource Center). And Mayek's claims aren't purely about the transfer itself: they are about his medical care and alleged retaliation by defendants, both types of claims that courts routinely require to be exhausted under § 1997e(a).

Second, Mayek contends that filing a grievance would have been futile because he was already at a different facility from where he was mistreated, because "the complete I.C.E. process is the laughing stock of the entire system," and because he has never received adequate relief even when he has won a grievance. Dkt. 42, at 5. But it is well-settled that there is no futility exception to the PLRA's exhaustion requirements. *See, e.g., Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) ("No one can know whether administrative requests will be futile; the only way to find out is to try."). And transfer to a new prison does not excuse a prisoner from exhausting available remedies. *See, e.g., Flournoy v. Schomig*, 152 F. App'x 535, 538 (7th Cir. 2005) ("movement out of an institution may render grievance procedures unavailable if the change in custody status effectively terminates the administrative process. Yet that was not the case here." (citations omitted)); *Lee v. Yu*, No. 12 C 4555, 2014 WL 4819152, at *7 (N.D. Ill. Sept. 2, 2014) ("Many courts hold that the mere fact of a transfer does not affect a prisoner's obligation to exhaust his administrative remedies before filing suit." (collecting cases)).

Third, Mayek states that prison staff intimidated him in mid-August 2021 by transferring him to a new prison and placing him in segregation: I take him to mean that he feared filing more grievances because of those actions. He also states that he didn't have the proper grievance forms during his several days of segregation. But Mayek's argument about the unavailability of the grievance process are contradicted by his own actions. He resumed filing grievances almost immediately after his release from segregation: he filed three grievances in September 2021 alone, just not one about his transfer. *See* Dkt. 39-1 (Mayek's grievance history). And defendants point out that even had he been delayed by a lack of grievance forms, the ICRS rules state that a prisoner can request to file a late complaint. Wis. Admin. Code

3

§ 310.07(2) ("At the discretion of the ICE, a late complaint may be accepted for good cause. An inmate shall request to file a late complaint in the written complaint and explicitly provide the reason for the late filing."). Mayek did not do so.

Fourth, Mayek states that staff responded to other grievances he filed by telling him that he couldn't resolve those issues through the administrative grievance process. For instance, in June 2021, Mayek filed a grievance about officers using cell phones during a trip to the hospital. The complaint examiner responded that because Mayek's grievance "allege[d] staff misconduct," the examiner "[could not] investigate such allegations" and that Mayek would need to instead "submit a statement outside of the ICRS" to be investigated by a security supervisor. Dkt. 43-1. I take Mayek to be saying that he saw no reason to file an ICRS grievance about his transfer because that too involved "staff misconduct" that needed to be addressed under a parallel procedure.

"Prison officials may not take unfair advantage of the exhaustion requirement, . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). I have previously denied exhaustion-based summary judgment motions where the DOC applied conflicting parallel sets of grievance rules to disadvantage an inmate. *See Turner v. Kallas*, No. 19-cv-1001-jdp, 2021 WL 5998520, at *2 (W.D. Wis. Dec. 20, 2021) ("the grievance records here show that Turner followed the guidance from examiners stating that his grievances couldn't be brought in the ICRS system and that he should instead give statements to an investigator under the parallel DAI Policy 310.00.01 system, which he did."); *Naseer v. Belz*, No. 13-cv-821-jdp, 2015 WL 519760, at *2 (W.D. Wis. Feb. 9, 2015) ("it is difficult to see why the ICRS process is relevant to plaintiff's

exhaustion. The ICRS examiners themselves concluded that plaintiffs' grievance should not be considered within the ICRS framework. Rather, the grievance was addressed 'in a manner similar to DAI Policy 310.00.01.'").

The problem for Mayek is that the record doesn't show that staff misled him into failing to complain about his transfer. Although this issue has arisen in multiple cases, the DOC has still not made clear how the DOC defines "staff misconduct" taking the subject of a prisoner grievance outside the scope of the ICRS system—most grievances this court sees in its civil-rights cases concern staff's failure to properly exercise their duties. But that lack of clarity is immaterial to the issue at hand. Regardless exactly how staff would have processed a grievance about Mayek's allegedly retaliatory transfer, Mayek knew from his previous experience that he had to do *something* to notify staff about the alleged misconduct. Mayek can't blame his failure to complain about the transfer on staff rerouting a previous grievance through the parallel "staff misconduct" system. He knew that he could have either filed a grievance about his transfer or sought to "submit a statement outside of the ICRS" as he did with the previous grievance. He did neither.

Mayek also discusses a 2023 grievance about health care, after which he states that the health services unit wouldn't help him because he filed a grievance. But those events occurred almost two years after the transfer at issue here and don't have anything to do with Mayek's decision not to file a grievance about his transfer.

Because defendants Lemieux and Boughton have shown that Mayek failed to exhaust his administrative remedies, I will grant their motion for summary judgment. Mayek has also named "John Doe supervisors" as defendants but his claims against them would fail for the same exhaustion-based reasons. So I will dismiss the entire case. That dismissal is without

5

prejudice, *see Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004), but Mayek would likely find it impossible to file a proper grievance now because the relevant events happened so long ago.

ORDER

IT IS ORDERED that:

1. Defendants Lemieux and Boughton's motion for summary judgment on exhaustion grounds, Dkt. 40, is GRANTED.

2. This case is DISMISSED without prejudice.

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered November 16, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge